**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01520-CMA

KEVIN WALSH,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

---

     This matter is before the Court on Plaintiff Kevin Walsh's appeal of the Commissioner's March 30, 2009 decision denying his claim for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I.    BACKGROUND

     Plaintiff Kevin Walsh was born in 1983, and was 19 years old on his alleged onset disability date of October 1, 2002.  He has at least a high school education and has previously worked as a grocery store bagger, beverage distributor and stocker, busser, and order taker; however, Plaintiff has no past relevant work.  (AR 23, 134).

Plaintiff alleges disability due to mental illness, specifically, schizophrenia and depression.  (AR 133).

Plaintiff applied for Disability Insurance (Title II) benefits on June 21, 2007.  (AR 91-94).[1]  Plaintiff alleged an onset disability date of October 1, 2002.  (AR 133).  His claims were initially denied on August 23, 2007.  (AR 66).  Plaintiff subsequently requested a hearing, which was held on August 21, 2008.  (AR 26-65).

### A.    HEARING BEFORE THE ALJ

At the hearing, Plaintiff testified as to the nature of his disabilities and his daily activities.  Plaintiff stated that he was working about fifteen hours per week for his family's beverage distribution business, for which he gets paid about $9.00 per hour, which amounts to over $2,000 per quarter.  (AR 31-32).  Plaintiff also stated that for the last three years he has been pursuing a creative arts and technologies degree at San Juan College, which would allow him to pursue a career in graphic design, and he hopes to earn his degree in about one more year.  (AR 34-35).  Plaintiff has problems concentrating and thinking clearly, but earns Bs and Cs in school.  (AR 35-36).  Plaintiff lives at home with his parents.  (AR 36).

Conflicting testimony was offered as to the extent of Plaintiff's ability to socialize with others.  Plaintiff responded in the affirmative when asked if he gets along with people okay.  (AR 38).  Plaintiff also stated that he has friends with whom he plays

---

[1]  Claimant also filed a Title XVI application on June 14, 2007, for benefits under Title XVI, but his application was denied for excess resources and Plaintiff did not request a hearing.  Accordingly, Plaintiff's appeal solely concerns his Title II application.  (*See* AR 14).

video games and spends time at their homes and with them at malls.  (*Id.*)  However,

Plaintiff stated that he has not seen his friends in a few months because he has been

"busy lately."  (AR 44).  Plaintiff also responded in the affirmative when asked if he

exercises a lot.  (AR 38)  Specifically, Plaintiff exercises at the recreation center and

does "a lot of snowboarding." (AR 38-39).  Plaintiff also testified that he goes to music

concerts "every once in a while," goes to movies about once a month with friends or

family, and goes out to eat about once a month with his family.  (AR 40-41, 44).

Plaintiff testified that he sees a doctor, who prescribes medications, for his

emotional problems about once a month.  (AR 41-42).  The treatment has helped

Plaintiff.  In the past, he had delusions and auditory hallucinations, but he no longer has

this problem.  (AR 42).

Plaintiff's mother, Linda Walsh, also testified.  (AR 45-53).  She stated that

Plaintiff is not a self-starter, but usually does what he is instructed to do, provided that

the instructions are simple and clearly defined.  (AR 45).  Ms. Walsh described Plaintiff

as "quiet and reclusive"; she has not seen Plaintiff in contact with any of his friends

since high school and she has never seen him spend time at venues where a lot of

young people gather.  (AR 46).  However, Plaintiff is comfortable attending summer

picnics and barbecues with the extended family, which he attends "more than 50

percent of the time," if the gathering is away from home, and which he attends more

frequently if the gathering is at home.  (AR 48).  Ms. Walsh also described Plaintiff as

prone to setting unrealistic goals and commented that Plaintiff's progress in college was "slow and not very on track."  (AR 47).

Ms. Walsh briefly described Plaintiff's first psychotic episode, which occurred when Plaintiff was 19 and resulted in his being fired from his summer job; Plaintiff did not understand why he was terminated and, prior to the termination, his job had made him irritable, in part because his duties kept shifting.  (AR 50).  Ms. Walsh also stated that Plaintiff appears to get easily overwhelmed or stressed by tasks; in the family business, he is most successful if he is given very simple tasks with very clear instructions and tasks that do not require him to be away from home for more than three to four hours.  (AR 51).

Plaintiff's father, Tim Walsh, also testified at the hearing in connection with the extent of Plaintiff's employment at the family business and Plaintiff's socialization.  (AR 54-60).  With respect to Plaintiff's social activities, Mr. Walsh stated that Plaintiff attends about two concerts a year, but usually by himself.  (AR 57).  Mr. Walsh also stated that Plaintiff's medication "has certainly helped" but it has made Plaintiff lethargic.  (AR 58).  With respect to Plaintiff's employment prospects, Mr. Walsh expressed concern about Plaintiff's ability to keep a job and suggested that Plaintiff would have trouble with punctuality or competency.  (AR 58).

B.  **VOCATIONAL EXPERT TESTIMONY**

Martin Rower, a vocational expert testified at the hearing.  He opined on three

hypotheticals posed by the ALJ, as well as a hypothetical question posed by Plaintiff's

attorney.  (AR 60-64).  First, the ALJ presented the following hypothetical:

> Moderate limitations on detailed instructions, understanding and
> following through on them[,] . . . at attention and concentration of the
> task for extended periods . . . "

(AR 61).  The vocational expert opined that such an individual could perform entry level

jobs at SVP 1 and 2, such as a small product assembler, cafeteria attendant, and

electronics worker.  (AR 62).

Next, the ALJ presented the following hypothetical:

> Same vocational profile.  Assume additionally the following.  A lot of
> psychological things that may not be proper for the hypothetical.
> There are no delusions or hallucinations.  There is no chronic grossly
> disorganized behavior.  But he does have problems with his thinking,
> some logical thinking.   Those are some of the psychological
> statements not specified on the RFC [Residual Functional Capacity]
> . . . . He does not have restrictions in activities of daily living.  But he
> does have severe limitations in social functioning . . . . I think that
> would  give  you  severe  problems  due  to  public,  coworkers,
> supervisors.  Moderate limitation in attention and concentration at
> some place and time.  One or two decompensations[2] . . . . No physical
> disabilities or problems.   He would have a problem on regular
> attendance.  Says schedule problems would be a problem.

(AR 62).  In response, the vocational expert concluded that all those limitations would

render the individual "unable to perform in a competitive labor market."  (*Id.*)

---

[2]  The ALJ clarifies that the decompensations are anxiety-related and result in a social withdrawal;
the shorter episodes last about one week, one episode lasted one month.  (AR 62, 259).  Plaintiff's first
episode occurred when he was 19.

The ALJ then presented a third hypothetical, namely an individual who could not sustain a forty-hour work week, at eight hours a day.  (*Id.*)  The vocational expert opined that such an individual would be unable to perform in a competitive labor market.  (*Id.*)

Plaintiff's attorney then presented the following modified version of the ALJ's first hypothetical:

> [A]dding a marked limitation in the ability to accept instructions and respond appropriately to criticism from the supervisors, marked problem in the ability to get along with coworkers or peers without distraction[.]

(AR 63-64).  The vocational expert opined that such an individual would be unable to perform in a competitive labor market.

## C.    THE ALJ'S DECISION[3]

On March 30, 2009, the ALJ issued a decision, finding that Plaintiff was not disabled.  (AR 20-24).  The ALJ determined that:

(1)    Plaintiff has not engaged in substantial gainful activity since October 1, 2002, the alleged onset date;

(2)    Plaintiff has the following severe impairments: schizophrenia, anxiety, and history of polysubstance abuse;

(3)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

---

[3]  Due to the death of the ALJ who presided at the hearing, a different ALJ issued the decision, based on a review of the hearing's transcript and the record.

(4)     Plaintiff has the RFC to perform sedentary to heavy work (no external

limitations), except moderate limitations on understanding and following

through on detailed instructions, in concentration and attention to tasks,

and ability to follow schedule within customary tolerances;

(5)     Although Plaintiff's medically determinable impairments could reasonably

be expected to produce the alleged symptoms, Plaintiff's statements

concerning the intensity, persistence and limiting effects of those

symptoms are not credible to the extent they are inconsistent with

Plaintiff's RFC;

(6)     Plaintiff has no past relevant work.  However, considering Plaintiff's age,

education, work experience, and residual functional capacity, jobs exist in

significant numbers in the economy that Plaintiff can perform**]**; and

(7)     Plaintiff has **<u>not</u>** been under a disability, as defined under the Social

Security Act, from October 1, 2002, the alleged disability onset date,

through the date of the decision.

(AR 16-24).

On May 26, 2009, Plaintiff filed a request with the Appeals Council for review (AR

10), which the Council denied on April 29, 2010.  (AR 1-5).  On June 28, 2010, Plaintiff

filed a civil action, seeking judicial review of the denial of Social Security benefits.  (Doc.

#1).  The Social Security Administrative Record was filed with the Court on September

10, 2010.  (Doc. #9).  On November 9, 2010, Plaintiff filed his Opening Brief.  (Doc.

#14).  Defendant, the Commissioner of Social Security, responded on December 14, 2010.  (Doc. #15).  Plaintiff did not file a Reply.  On May 23, 2011, oral argument was presented before this Court, and the Court took the matter under advisement.  (Doc. #20).

In this appeal, Plaintiff contends that the ALJ erred in two respects: (1) the ALJ failed to assess correctly the opinions of Plaintiff's treating and examining physicians; and (2) the ALJ failed to determine correctly Plaintiff's RFC.  (Doc. #14).

## II.   STANDARD OF REVIEW

### A.   Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (unpublished) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)).

8

**B.      Evaluation of Disability**

The qualifications for disability insurance benefits under the Social Security Act

are that the claimant meets the insured status requirements, is less than sixty-five years

of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Social Security Act defines a disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last

for a *continuous* period of not less than *twelve* months." 42 U.S.C. § 1382c(a)(3)(A)

(2006) (emphasis added). "[A] medical finding of disability is not based solely on

objective test results. It includes an evaluation of the patient's medical history and the

physician's observations of the patient, and necessarily involves an evaluation of the

credibility of the patient's subjective complaints [.]"  *Nieto v. Hecker*, 750 F.2d 59, 61-62

(10th Cir. 1984).

**III.    ANALYSIS**

**A.      Assessment of the Opinions of Plaintiff's Treating and Examining
        Physicians**

**1.      Dr. Lynn Partridge, the Treating Psychiatrist**

Plaintiff takes issue with the fact that the ALJ accorded the opinions of Plaintiff's

treating psychiatrist, Dr. Lynn Partridge moderate weight, rather than controlling weight.

(Doc. #14 at 30).[4]  Plaintiff also takes issue with the ALJ's reliance on Plaintiff's

---

[4] All page number citations refer to the court's CM/ECF docketing system and not to the
document's original numbering.

activities such as attending college courses and spending much time playing video games and asserts that these activities fail to undermine Plaintiff's assertions concerning his social impairments and fail to show an ability to perform in a competitive labor market.  Specifically, Plaintiff asserts that he is only taking one credit hour at a time and his penchant for playing video games "shows a reclusiveness and obsession with non-productive repetitive activity." (*Id.* at 31-32).  Plaintiff also complains that the ALJ's decision to downgrade Dr. Partridge's marked and extreme assessments of Plaintiff's limitations to moderate is unsupported by the record. (*Id.* at 32).  Finally, Plaintiff finds fault with the ALJ's conclusion that no evidence of decompensation exists, even in the face of Dr. Partridge's notation of three instances of such in Plaintiff's past. (*Id.*)

Pursuant to 20 C.F.R. § 404.1527(d)(2), the ALJ must consider certain factors when assessing treating medical source opinions.  The opinion of a treating source is generally given controlling weight.  However, an ALJ can disregard that opinion, but only if it is contradicted by other medical evidence or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757 (10th Cir. 2009) (unpublished); 20 C.F.R. § 404.1527(d)(2); *see also* S.S.R. 96-2P, at *2 (1996) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the

case record.").  The analysis of how much weight to accord a treating source opinion is

sequential.

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation and

citation omitted); *see also* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source

presents relevant evidence to support an opinion, particularly medical signs and

laboratory findings, the more weight we will give that opinion. The better an explanation

a source provides for an opinion, the more weight we will give that opinion.").

If a treating source's[5] opinion is not given controlling weight, the ALJ must "give

good reasons" and consider a list of regulatory factors. *Watkins*, 350 F.3d at 1301

(reversing denial of benefits where the ALJ failed to articulate the weight, if any, he gave

the treating source's opinion, and the reasons for assigning that weight or for rejecting

the opinion); *see also* 20 C.F.R. § 404.1527(d)(2).[6] Though the ALJ must consider all

---

[5]  "Treating source means [the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502.

[6]  These regulatory factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)(l),

these factors, he need not discuss all of them. *See Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). The ALJ's decision must be specific enough to make clear to subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Watkins*, 350 F.3d at 1300-01; *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In the instant case, on August 11, 2008, Dr. Partridge responded to questions from Plaintiff's attorney concerning Plaintiff's impairment.  (AR 257-265).  In particular, Dr. Partridge opined that Plaintiff experiences incoherence, loosening of associations, illogical thinking, or poverty of content of speech associated with blunt affect or flat affect, and noted that Plaintiff currently suffers from emotional withdrawal and/or isolation.  (AR 258).  Dr. Partridge further noted that Plaintiff has severe difficulties in maintaining social functioning.  (*Id.*)  In support, Dr. Partridge noted that Plaintiff has not had any interaction with friends for over a year, most of Plaintiff's social activity was limited to his immediate family, and Plaintiff does not initiate social activities.

Additionally, Dr. Partridge assessed the following mental limitations:

(1)   Understanding and memory:
- ability to understand and remember very short and simple instructions: MODERATE
- ability to understand and remember detailed instructions: EXTREME

(2)   Sustained concentration and persistence:
- ability to carry out very short and simple instructions: MODERATE
- ability to carry out detailed instructions: MARKED

---

(d)(2)(ii), (d)(3)-(d)(6).

- ability to maintain attention and concentration for <u>extended</u> periods: MARKED
- ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances: MODERATE
- ability to work in coordination with or in proximity to others without being distracted by them: EXTREME

(3)   Social interaction:
- ability to interact appropriately with the general public: MODERATE

(4)   Adaptation:
- ability to set realistic goals or make plans independently of others: EXTREME

(AR 263-264).

In the March 30, 2009 Decision, the ALJ concluded that Plaintiff had moderate difficulties in social functioning, despite also acknowledging Dr. Partridge's conclusion that Plaintiff has severe limitations in maintaining social functioning.  (AR 17).  Even though Dr. Partridge is a treating source, the ALJ accorded his opinions moderate weight, rather than controlling weight, because Dr. Partridge's opinion was "not entirely credible based on the overall evidence."  Specifically, the ALJ looked to the bulk of Dr. Partridge's treatment notes from September 2006 through August 2007, and pointed to the very few notations concerning Plaintiff's mood, anxiety, self-esteem, and cognitive abilities.  (AR 201-225).  In particular, the ALJ noted that on May 31, 2007, Dr. Partridge reported that an increased dosage of Zyprexa reduced Plaintiff's anxiety, and Plaintiff's mood and anxiety improved.  (AR 18, 206).  By August 2007, Plaintiff was more self-directed and only mildly anxious.  (AR 18, 202).  Plaintiff's judgment and attention was

good, and his thought process was logical and goal directed with some repetitiveness. (AR 18).

With respect to Plaintiff's concentration, persistence or pace, the ALJ concluded that Plaintiff has moderate difficulties, despite the fact that Dr. Partridge assessed Plaintiff's concentration as fair.  (AR 18, 202).  In sum, the ALJ gave Plaintiff the benefit of the doubt that he is distracted by intrusive thoughts and obsesses on the likelihood of his inability to care for himself in the long term and that he gets anxious and distracted around others.  However, the ALJ reasonably pointed to Plaintiff's improved condition within twelve months of treatment by Dr. Partridge and Plaintiff's ability to take a college class.  (AR 19).

The Court finds that the ALJ analyzed Dr. Partridge's opinion according to the applicable law: she clearly articulated the weight she accorded Dr. Partridge's opinion and the reasons for that weight.  As previously noted, the Court may not substitute its judgment for that of the Commissioner.  Further, the Court finds that the ALJ's treatment of Dr. Partridge's opinion is supported by substantial evidence in the record, including evidence that Plaintiff has been earning Bs and Cs in college (AR 36), Plaintiff's own testimony concerning his socialization with others, *i.e.*, spending time at the mall with friends and playing video games at friends' houses (AR 38), exercising in a public recreational center facility (AR 39) in addition, there is a paucity of evidence concerning

Plaintiff's inability to obtain and sustain competitive employment.[7]  Accordingly, the

Court finds no error in the ALJ's treatment of Dr. Partridge's opinion.[8]

### a.      Regulatory Requirements/Listings

Plaintiff asserts that he would have met the regulatory requirements for the "A"

and "B" criteria for a listed impairment under 20 C.F.R. Part 404, Subpart P, Listing

12.03 (Schizophrenic, Paranoid and other Psychotic Disorders) if the ALJ gave

controlling weight to Dr. Partridge's assessed marked and extreme limitations and if the

ALJ credited Dr. Partridge's notation of three episodes of decompensation experienced

by Plaintiff.  (Doc. #14 at 32).

---

[7]  The record contains only one instance in which Plaintiff was unable to sustain competitive employment (termination from Kentucky Fried Chicken for reasons he cannot explain).  (*See, e.g.*, AR 50) ("He called us when we were out camping and told us that he had been fired from that job.  He seemed distressed by that but he didn't seem to understand why it had occurred.").  Additionally, much of the evidence concerning Plaintiff's inability to obtain competitive employment rests on speculation.  (*See, e.g.*, AR 58) ("I don't know.  I know he's trying for some things but I don't know if he'd be able to keep a job . . . . I think with another employer he might have trouble with punctuality or competency.").

[8]  Plaintiff also takes issue with the ALJ's conclusion that the lack of "treatment notes from 2003, 2004, 2005, or January to August 2006 . . . impacts negatively on the claimant's allegations that he has been disabled since 2002."  (ALJ Decision at AR 21; Plaintiff's Opening Brief, Doc. #14 at 30-31). However, Plaintiff acknowledges that the lack of treatment notes is due to the fact that treatment records from a Dr. Braunstein, a psychiatrist from Alpine Clinic, who treated Plaintiff during this time period were not obtained.  (Doc. #14 at 30 n.8).  The Court reminds Plaintiff that he bears the burden of presenting evidence to establish his disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled."); *Groberg v. Astrue*, No. 09-4203, 2011 WL 538870, at *1 (10th Cir. Feb. 17, 2011) (unpublished) ("The claimant bears the burden of establishing a prima facie case of disability at steps one though four.") (citing *Williams v. Bowen*, 844 F.2d 748, 751 n.2 (10th Cir. 1988)).  The Commissioner has no obligation to seek additional evidence or supplement the record unless the Commissioner is unable to make a disability determination based on the evidence presented.  *See* 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician or psychologist or other medical evidence is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision," and will take action to obtain such information.).  In the instant case, it is apparent to this Court that the ALJ needed no further information to resolve Plaintiff's disability claim.

As set forth in the regulatory Listing 12.03, schizophrenic, paranoid, and other

psychotic disorders are "[c]haracterized by the onset of psychotic features with

deterioration from a previous level of functioning.  The required level of severity for

these disorders is met when the requirements in both A **and** B are satisfied, or when the

requirements in C are satisfied." 20 C.F.R. Part 404, Subpart P, 12.03 (emphasis

added).

In order to satisfy the requirements of 12.03(A), a claimant must present

evidence of "[m]edically documented persistence, either continuous or intermittent, of"

one or more symptoms such as blunt affect, flat affect, or emotional withdrawal and/or

isolation.  20 C.F.R. Part 404, Subpart P, 12.03(A).

In order to satisfy the requirements of 12.03(B), the claimant's symptoms must

result "in at least **two** of the following: 1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in

maintaining concentration, persistence, or pace; or 4. Repeated episodes of

decompensation, each of extended duration[.]" 20 C.F.R. Part 404, Subpart P, 12.03(B)

(emphasis added).

The regulations clarify that a "marked limitation may arise when **several**

**activities or functions** are impaired, or even when only one is impaired, as long as the

degree of limitation is such as to **interfere seriously** with [the claimant's] **ability to**

**function independently, appropriately, effectively,** and on a **sustained basis**."  20

C.F.R. Part 404, Subpart P, 12.00(1)(C) (emphasis added).

In the instant case, as already discussed, the ALJ concluded that Plaintiff has mild limitations in activities of daily living, and moderate limitations in concentration, persistence, or pace, and social functioning, and the Court finds no error in this conclusion.  Therefore, because Plaintiff does not have marked restrictions in activities of daily living, maintaining social functioning, or in concentration, persistence, or pace, Plaintiff's symptoms do not satisfy the requirements of 12.03(B).  However, for the sake of completeness, the Court will next consider whether the record contains evidence of repeated episodes of decompensation.

**b.      Episodes of Decompensation**

With respect to the episodes of decompensation, the ALJ did not credit the three cited episodes because they were not during the relevant period.  (AR 19).

In order to establish the required level of severity of a schizophrenic disorder under Listing 12.03(C), a claimant must present evidence of a "[m]edically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, **and** one of the following:

1.      Repeated episodes of decompensation, each of extended duration; or

17

2.      A residual disease process that has resulted in such marginal

adjustment that even a minimal increase in mental demands or

change in the environment would be predicted to cause the

individual to decompensate; or

3.      Current history of 1 or more years' inability to function outside a

highly supportive living arrangement, with an indication of continued

need for such an arrangement."

20 C.F.R. Part 404, Subpart P, 12.03(C) (emphasis added).  In the instant case, the

parties dispute whether the record contains evidence of "repeated episodes of

decompensation, each of extended duration."

As clearly articulated in 20 C.F.R. Part 404, Subpart P, Appendix 1, "[t]he term

*repeated episodes of decompensation, each of extended duration* in these listings

means three episodes within 1 year, or an average of once every 4 months, each

lasting for at least 2 weeks."  Listing 12.00 (emphasis in the original).  If a claimant has

experienced "less frequent episodes of longer duration, [the Commissioner] must use

judgment to determine if the duration and functional effects of the episodes are of equal

severity and may be used to substitute for the listed finding in a determination of

equivalence."  (*Id.*)

In the instant case, Dr. Partridge's records reflect three episodes of

decompensation, each between two and three years apart.  Two episodes lasted one

week, one episode lasted one month.  (AR 62, 259).  As such, these episodes of

18

decompensation fail to meet the regulatory definition of "repeated episodes of decompensation, each of extended duration" and, therefore, the ALJ correctly gave "no weight" to Dr. Partridge's notation of/opinions concerning these episodes.  Plaintiff has failed to cite to any authority that would suggest otherwise.

Accordingly, the Court finds that the ALJ correctly concluded that Plaintiff failed to meet the regulatory requirements of 12.03(A) and (B), or (C), and, therefore, Plaintiff's impairment or combination of impairments does not meet or medically equal one of the regulation's listed impairments.

### 2.    Ed Cotgageorge, Ph.D., a Consultative Psychologist

Next, Plaintiff asserts that the ALJ erred in analyzing the opinions of a consultative psychologist, Ed Cotgageorge, Ph.D.  In particular, Plaintiff contends that the ALJ merely "presumes that Dr. Cotgageorge's opinion is based on claimant's 'exaggerated' self reporting," and such "speculative inferences" are improper.  (Doc. #14 at 33-34).

The Commissioner must give substantial weight to the treating physician's opinion and less weight to the opinions of doctors, such as Dr. Cotgageorge, who have examined but not treated the claimant. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987); *Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1211 (D. Kan. 2003). The opinions of examining sources, such as Dr. Cotgageorge, are to be evaluated based upon the same regulatory factors as treating source opinions, which are set forth in 20 C.F.R. §§ 404.1527(d); 416.927(d). *See Doyal*

*v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). Though the ALJ must consider all these factors, he need not discuss all of them. *See Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). The ALJ's decision must be specific enough to make clear to subsequent reviewers the weight given to the medical source's opinion and the reasons for that weight. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In the instant case, the Court finds that the ALJ's March 30, 2009 Decision is specific enough to make clear to this Court the weight given to Dr. Cotgageorge's opinion (*i.e.*, "little weight") and the reasons for that weight.  In particular, the ALJ reasonably concluded and noted that much of Dr. Cotgageorge's opinion appeared to be based on Plaintiff's subjective complaints, which complaints do not comport with the reality of Plaintiff's daily activities, abilities to function, and Dr. Partridge's contemporaneous observations of Plaintiff's improving condition.

Accordingly, the Court finds no error in the ALJ's assessment and treatment of Dr. Cotgageorge's opinion.

## B.    ASSESSMENT OF PLAINTIFF'S RFC

Plaintiff asserts that the ALJ erred in determining that Plaintiff has the RFC "to perform sedentary to heavy work (no external limitations) as defined in 20 CFR 404.1567(b) except moderate limitations (but ability still there to perform tasks

satisfactorily) on understanding and following through on detailed instructions, in concentration and attention to tasks, and ability to follow schedule within customary tolerances." (March 30, 2009 Decision at AR 20; Plaintiff's Brief, Doc. #14 at 35). Plaintiff asserts that the ALJ ignored Dr. Partridge's treatment notes, which "document[ed] an increasing lack of social interaction by claimant with any person other than his family." (*Id.* at 36). Plaintiff further contends that the evidence in the record concerning his "activities do not show an ability to get along with coworkers, supervisors or others. Nor do they show an ability to understand and carry out complex instructions." (*Id.* at 37). Finally, Plaintiff asserts that, "[b]ecause the combination of limitations would disable the claimant, it is important that the RFC assessment fairly reflect [sic] all of claimant's limitations." (*Id.*)

"The [Commissioner] must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991) (remanding case where ALJ failed to correctly evaluate the claimant's mental impairments in combination with the effects of his pain). When evaluating mental impairments, the Commissioner must follow the "special technique" set forth in 20 C.F.R §§ 404.1520a(a), 416.920a(a). When employing the "special technique" at Steps 2 and 3, the ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he has] a medically determinable mental impairment[ ]"

and, if she so finds, "specify the symptoms, signs, and laboratory findings that

substantiate the presence of the impairment[.]" 20 C.F.R. § 404.1520a(b)(1).

If the ALJ finds a medically determinable impairment, she is then required to rate

the degree of a claimant's functional limitations caused by those limitations in the areas

of activities of daily living; social functioning; concentration; persistence, or pace;

and episodes of decompensation. 20 C.F.R. § 404.1520a(c); *Stokes v. Astrue*, 274

F. App'x 675 (10th Cir. 2008) (unpublished). The ALJ's written decision must incorporate

her pertinent findings and conclusions. 20 C.F.R. § 404.1520a(e)(3).

Further, the consideration of the amount of treatment a claimant receives is to

play no role in the ALJ's determination of an impairment's severity. "This is because the

lack of treatment for an impairment does not necessarily mean that the impairment does

not exist or impose functional limitations. Further, attempting to require treatment as a

precondition for disability would clearly undermine the use of consultative

examinations." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010)

(unpublished).

In the instant case, for the reasons already discussed, the Court finds no error in

the ALJ's determination of Plaintiff's RFC.  Contrary to Plaintiff's assertion, the ALJ did

not ignore Dr. Partridge's treatment notes concerning Plaintiff's social interaction with

others; in fact, the ALJ noted documented improvements of Plaintiff's condition.

Further, the ALJ has given Plaintiff the benefit of the doubt concerning the effects of his

limitations and, accordingly, assessed "moderate" limitations in Plaintiff's ability to

22

understand and follow detailed instructions, maintain concentration and attention to tasks, and to follow a schedule with customary tolerances.

IV.    **CONCLUSION**

Accordingly, IT IS ORDERED THAT:

(1)    The ALJ's denial of social security disability benefits is AFFIRMED; and

(2)    Each party shall pay its own costs and attorneys' fees.

DATED: May 27, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District